## CALEB H. BOOTH
### v.
## JOSEPHINE C. SMITH.

RESCISSION OF CONTRACT.—The court is of the opinion that under the circumstances of the case, the complainant was justified in rescinding her contract, and was entitled to repayment of her purchase money. The fact that complainant's husband and agent, acting as treasurer of the corporation, disbursed some of the funds paid by complainant for the stock in question, is not chargeable to complainant as an estoppel.

APPEAL from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.    Opinion filed January 27, 1886.

The report of this case upon the former appeal contains a sufficient statement of the pleadings as they then stood, and of the facts as they then appeared from the record.    Booth v. Smith, 15 Bradwell, 91.    Subsequently the complainant amended her bill by averring that in respect to all the transactions in any way pertaining to the investment of money by Parsons, and the obtaining the $4,000 from the complainant, and the prosecution and manipulation of such scheme by Parsons, he, said Parsons, was acting as the authorized agent of defendant Booth, and in all his actings and doings in that behalf, he and Booth were in collusion to defraud the complainant of her money ; that although by the books of the company, Booth appeared to be the owner of 386 shares of the capital stock of the company, said stock was issued to Booth without any consideration whatever, Kelly, to whom it was originally issued, being the mere agent of Booth and in collusion with him for like fraudulent purposes ; that as soon as the complainant could or did ascertain the falsity of the representations made to her by Parsons, and the utter worthlessness of said mine and the stock of the company, she notified Parsons that she desired to rescind, and did rescind said contract or sale, and offered to surrender the stock purchased from him

Booth v. Smith.

and demanded a return of the money paid him therefor, and charged him with having defrauded her out of the same; that in reply to such offer to rescind he begged her to commence no proceedings in the matter, and he would endeavor to have said stock sold to some other person who would advance the necessary money to reimburse the complainant the full sum paid by her; that a few days afterward she renewed her demand for the return of her money, but had been unable to obtain it or any part of it; that she is and at all times has been ready and willing to return to Parsons or Booth all of said stock; that said corporation had long since ceased to do business and was hopelessly insolvent, and should be dissolved and its affairs wound up. By her amended bill the complainant prays for a decree dissolving the corporation and ordering Booth to repay her said sum of $4,000 and interest, and her damages by her sustained by reason of said fraudulent transaction.

Booth answered the amended bill admitting that in the negotiation with the complainant or her agent, and in selling to her said stock in said corporation, Parsons was his authorized agent, but in other respects denying the equities of said bill.

The cause was afterward heard on pleadings and proofs and a decree rendered finding the equities with the complainant, and finding that Booth, through his agent Parsons, made to the complainant the several representations in the bill alleged; that the complainant, relying upon said representations and believing them to be true, purchased said stock of Parsons and paid him therefor said sum of $4,000 ; that in said transaction Parsons was the agent of Booth; that said representations were false and that their falsity was known to Parsons, and that they were made by him to the complainant's agent for the purpose of inducing the complainant to make said purchase, and that said representations and the obtaining of the complainant's money by means thereof were a fraud upon her; that at the time of said negotiations the stock of said corporation was wholly worthless ; that within a reasonable time, and as soon as the complainant ascertained that she had been defrauded in manner aforesaid, she offered to return to Parsons

said stock and demanded of him a return of her money, which was refused; that the receiver heretofore appointed had settled and closed up the affairs of said corporation and had on hand $880.08, which he had paid into the hands of the clerk of the court. It was therefore decreed that the complainant recover of said Booth the sum of $3,111.92, with interest from the date of the decree, and that she have execution therefor; and it was further ordered that the complainant be paid out of the moneys in the hands of the clerk the sum of $868, upon her surrender to the clerk for the use of Booth, of the certificates of stock in her hands. From this decree defendant Booth has appealed to this court.

Messrs. McCONNELL & SMITH, for appellant.

Messrs. DENT, BLACK & CRATTY BROS., for appellee.

BAILEY, P. J. As to several of the material facts found by the decree the evidence is conflicting, but we are inclined to the view that the conclusions reached by the court below are fairly warranted by the evidence.

The fact of Parson's agency for Booth in all the matters involved in this controversy is, we think, established beyond any reasonable doubt. Booth expressly admits the agency in his answer to the amended bill, but seeks to limit it to the mere matter of the negotiation and sale to the complainant of the shares of stock in question, but Parson's testimony—and he was the only witness who was examined on the subject—makes it very clear that he was Booth's agent, having general charge of all his interests and business connected with the Western Indiana Coal Company.

It seems to be established beyond any reasonable controversy, that Parsons, prior to the sale of said stock to the complainant, made to Smith, the complainant's husband and agent, the several representations set forth in the bill, substantially as therein alleged. They are sworn to positively by Smith, and in the main are admitted by Parsons, and Smith's testimony is corroborated, to some extent at least, by a mem-

Booth v. Smith.

orandum which he testifies he made at the time, and read over to Parsons, and also by the testimony of two witnesses to whom Parsons sought to sell the same stock at about the same time, and to whom he made certain portions of the same representations.

We think the conclusion fairly deducible from the evidence, that the complainant or her agent relied upon said representations and was thereby induced to purchase said stock. Smith so testifies. He says: "I went into the company upon the representations of Mr. Parsons. Without them I should not have gone in. If the real facts had been stated I should not have paid one cent. I had no other source of information. I had no experience as a miner." It is said, however, that as Smith visited and inspected the mine before making the contract with Parsons, he shou'd be deemed to have made the purchase upon his own judgment, and not in reliance upon Parson's representations.

Smith admits that he went to the mine with Parsons before signing the agreement, and was there about twenty minutes. But giving to that fact all the force to which it is properly entitled, it is clear that most, if not all the representations in question, related to matters which could not be known from such brief inspection of the mine. Especially is this so, when we consider the fact that Smith had had no experience in mining coal and could form very little, if any, just estimate from such an inspection of the productiveness of the mine, the cost of mining, the quality of the coal, or the sum which had already been expended in developing the mine. He could not have ascertained from such inspection whether the company was successfully operating its mine and paying its current expenses out of the product of the mine; or that the product of the mine could easily be increased to fifty tons per day, and that the mine would then be profitable; or that the coal could be mined and placed on the cars at the mine at a cost of not to exceed $1.27 per ton; or that said coal would bring in the market twenty-five cents per ton more than any Illinois coal; or that the stockholders of the company had invested in their plant and the purchase of their

property the sum of $3,500. As to some of these matters an expert might, perhaps, have formed some judgment from a mere inspection of the mine, but one having no experience in mining would obviously be forced to seek other sources of information. Smith testifies that he made no examination of the company's books, and in this he is not disputed. The legitimate inference from all the evidence is, that in these matters he relied solely upon Parsons' representations.

But it is insisted that these representations were mere expressions of matters of opinion, and that even if false, they were not such misrepresentations as would justify a rescission of the contract. We think, however, that most, if not all of them, especially when viewed in the light of the attending circumstances, were representations of facts, upon which the complainant had a right to rely in entering into a contract for the purchase of said stock. Such clearly was the representation as to the amount of money which had already been invested in the business of the company. That was a fact upon which the value of the stock about to be purchased very largely depended. The same may be said of the representations as to the condition of the company's business, whether profitable or otherwise. The representation as to the cost per ton of mining the coal and placing it on the cars at the mine, was clearly the statement of a fact derived from actual experience in operating the mine. If the mine had never been operated or, perhaps, if Parsons had never had any experience in operating it, such statement might have been deemed a mere expression of opinion. But when he is shown to have been engaged for some time in working the mine so as to have, presumably, in his possession all the data from which the precise fact as to the cost of mining might be deduced, the statement becomes a matter of fact upon which the complainant might properly rely, and not a mere expression of opinion. Upon analogous principles, it may be held that the representation as to the value and market price of the coal, was a statement of a fact and not an opinion.

The record very clearly shows that most of said representations were false. It was admitted by the defendant at the

Booth v. Smith.

hearing that the coal from said mine, instead of being worth twenty-five cents per ton more than Illinois coal, was worth twenty-five cents per ton less, and that efforts to sell the same in the Chicago market in competition with other coal were unsuccessful. The evidence is uncontradicted that the cost of mining said coal and placing it on the cars at the mine, instead of being only $1.27, was in fact a little over $1.88 per ton. It is also proved beyond dispute that the mine, at the time said representations were made, instead of making a profit was running at a considerable loss, and the evidence seems to show that it was incapable of being operated except at a large loss. The evidence also seems to show very clearly that the representation as to the amount of money which had been invested in the mine was substantially untrue.

The evidence as to whether Parsons knew the falsity of these several representations at the time he made them, is in some respects quite conflicting, but the chancellor who tried the case, and who saw and heard the witnesses, having decided this question adversely to the defendant, we do not feel justified in disturbing his finding. Parsons must be deemed to have known the facts as to the amount of money he had invested in the company, and he does not attempt to deny such knowledge, but as to the productiveness of the mine, the expense of working it and the quality of the coal, he claims that at the time he made said representations he believed them to be true. Without attempting to analyze the evidence in detail, it is perhaps sufficient to say, that he had then been operating the mine for a considerable time and had in his possession all the data upon which the truthfulness of his representations depended. Furthermore, when he made the representations, he added, by way of emphasizing them, as Smith testifies, "This is no guess work. Having had four years' experience, I know what I am saying."

In view of all the facts we are of the opinion that the complainant was justified in rescinding her purchase of the stock and demanding a return of the purchase money. It appears that very shortly after the purchase and as soon as she had learned the falsity of said representations, she notified Parsons

of her election to rescind, and offered to surrender to him the stock and demanded a return of the money paid therefor. At Parsons' earnest solicitation she delayed proceeding for a time to enable him to find another purchaser for the stock, but on his failure in that respect, she renewed her demand for a return of her money. Under these circumstances, it was proper for the court to decree a rescission of the contract and a re-payment of the purchase money, and this, in substance, has been done.

It seems that after the purchase of said stock by the com-plainant, Smith, her agent was elected and served as a director and the treasurer of said corporation. It also appears that a portion of the money paid for the stock was in fact paid in to the company, and so came into Smith's hands as treasurer, and was disbursed by him in that capacity; and it is argued that by reason of these facts the complainant should be estopped from making a claim for reimbursement from the defendant. We are unable to see in this any just ground for an application of the doctrine of estoppel. It is difficult to see how the acts of Smith as director and treasurer of the corporation were charge-able to the complainant. While acting in those capacities he was acting as the agent of a corporate body to which the com-plainant bore no relation except that of stockholder. While he may, in a sense, be said to have represented the complain-ant's interests in the corporation the complainant had no legal control over and no legal responsibility for his acts as such officer.

But were this otherwise, no estoppel could arise from his acts prior to the discovery of the fraud, nor from his acts after its discovery, and the offer to rescind, and while he was con-tinuing to act for the company at Parsons' solicitation, to give him time to negotiate the complainant's stock to some other party. When those negotiations failed, Smith seems to have ceased to act as an officer of the corporation.

We think the decree was fairly justified by the evidence, and it will therefore be affirmed.

Decree affirmed.